IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-CT-3042-H

JOHN MARVIN BALLARD )
    Plaintiff, )
)
)
v. )
) **ORDER**
)
TRACY JOHNS, DR. KAREN )
STEINOUR, CANDACE GREGORY, )
MR. M. MCKOY, J. GODWIN and )
JUSTIN ANDREWS, )
    Defendants. )

This matter is before the court on defendants' motion to dismiss for failure to state a claim or, in the alternative, for summary judgment [DE #85]. Plaintiff has responded, albeit it out of time[1], to the motion. Also before the court is plaintiff's motion for an order overruling defendants' objections to certain document production requests [DE #84]. These matters are ripe for adjudication.

**PROCEDURAL HISTORY**

Plaintiff John Marvin Ballard ("plaintiff") is a civil detainee confined at the Federal Correctional Institution at Butner, North Carolina pursuant to 18 U.S.C. § 4248. On

---

[1] Plaintiff filed a declaration [DE #95] that he timely gave his filing to prison officials. The court considers this filing as if it had been timely filed.

February 28, 2011, plaintiff filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), challenging various conditions of his detention, including claims concerning telephone restrictions, the seizure and destruction of legal documents, being placed in administrative segregation without due process, and the inability to attend religious services [DE #1, 4, 5]. On July 11, 2012, the court granted defendants' motion to respond to the complaint out of time, denied defendants' motion to dismiss or for summary judgment, and granted in part and denied in part several motions by plaintiff [DE #36].

On September 13, 2012, Magistrate Judge William A. Webb issued a scheduling order, directing that all motions of any kind must be filed by October 26, 2012 [DE #38]. On October 19, 2012, the court granted plaintiff's motion for reconsideration, and allowed plaintiff to proceed with claims against former Butner Warden Tracy Johns [DE #41]. On October 26, 2012, defendants filed a second motion to dismiss or for summary judgment [DE #43], along with a declaration by Tracy Johns [DE #45]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion, the consequences of failing to respond, and the response

2

deadline [DE #46]. On November 1, 2012, defendants moved to consolidate several Bivens actions by § 4248 detainees [DE #47].

On November 6, 2012, plaintiff filed a motion for appointment of counsel [DE #48]. On November 29, 2012, plaintiff filed a motion for discovery [DE #52]. On December 13, 2012, having sought and obtained an extension of time in which to do so [DE #48, 50], plaintiff responded in opposition to defendants' motion to dismiss or for summary judgment [DE #53]. On January 18, 2013, plaintiff moved to amend his complaint [DE #56]. On April 2, 2013, the court denied defendants' motion to consolidate [DE #64]. On April 11, 2013, defendants responded in opposition to plaintiff's motion for appointment of counsel [DE #65] and moved to extend the time for responding to plaintiff's proposed amended complaint [DE #66].

On May 3, 2013, this case was reassigned to the undersigned. [DE #69]. By order filed August 15, 2013, this court denied plaintiff's motions for appointment of counsel and discovery [DE #48, 52]. Additionally, the court granted plaintiff's motion to amend [DE #56], granted defendants' motion for an extension of time [DE #66], and granted in part and denied without prejudice in part defendants' motion to dismiss or for summary judgment [DE #43]. Specifically the court dismissed the Bivens claims for monetary damages against the

3

government and the government employees in their official capacities.

A new scheduling order was entered on September 11, 2013 [DE #74]. Defendants answered the complaint on September 16, 2013 [DE #76]. Plaintiff filed a motion to transfer or expedite or issue a temporary injunction or temporary restraining order, which was denied by order filed October 30, 2013 [DE #79]. Plaintiff also filed a motion for production of documents [DE #78], which was denied as moot by order of Magistrate Judge William A. Webb on November 8, 2013 [DE #81]. Now before the court are the plaintiff's motion to overrule objections to requests for document production [DE #84], and defendants' motion to dismiss or for summary judgment [DE #85]. Remaining before the court are plaintiff's claims for individual liability of the government employees under Bivens and plaintiff's claims for injunctive relief against the defendants in their official capacities.

**STATEMENT OF THE FACTS**

Since becoming a civil detainee in 2010, plaintiff has been subject to discipline on several occasions. He takes issue with this discipline, as he believes as a civil detainee he is not subject to the BOP disciplinary policies. Plaintiff alleges that he should not be subjected to the discipline and

4

restrictions of the Commitment and Treatment Program ("CTP"). In 2006, FCI Butner began to house federal inmates whose sentences were about to expire, and who were being considered for certification as "sexually dangerous persons" under the Adam Walsh Act. The BOP established the CTP at FCI-Butner,

> which houses post-sentence inmates who have been certified or committed as sexually dangerous persons under the Adam Walsh Act for the purposes of confinement and treatment. The overall mission of the CTP is to protect the public by reducing the incidence of sexual violence and child molestation in society by confining and providing comprehensive treatment services to individuals civilly committed as sexually dangerous persons. The purpose of providing such confinement and treatment is to assist these individuals in developing effective self-management skills, and to prepare them for productive and crime-free lives upon conditional discharge and release to the community.

Andrews Decl. [DE #87] ¶ 6.

CTP inmates are subject to BOP Program Statement 5270.09, *Inmate Discipline Program,* which helps to ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing BOP staff to impose sanctions on inmates who commit prohibited acts. Although a civil detainee, plaintiff meets the BOP's definition of inmate pursuant to 28 C.F.R. § 500.1(c) and is therefore subject to the BOP's disciplinary program. See also BOP Program Statement 5270.09.

5

Plaintiff's remaining claims

> concern[] telephone and mail restrictions, being placed in administrative segregation without due process, and the inability to attend religious services against defendant Johns, . . . the seizure and destruction of legal documents against . . . defendant . . . Godwin, and . . . issues with his mail against Johns, Steinour, Gregory and McKoy,

[DE #14 at 3.] Plaintiff's allegations are detailed in his filings as well as prior orders of this court. The underlying basis of all his complaints appear to be that he, as a civil detainee, should not be subjected to BOP regulations and policies and not sanctioned as a result of violating the BOP rules. The following is a summary of plaintiff's disciplinary history as it relates to his allegations.

In October 2010, FCI Butner Special Investigative Services ("SIS") officers conducted a shakedown of plaintiff's cell and seized several items. Defendant Godwin was given the confiscated items to inventory. During her inventory, Godwin found several photos of plaintiff's family members, which she returned to plaintiff as they were not contraband. Plaintiff signed an acknowledgement form stating he received sixteen photos taken during the shakedown. Remaining items were determined to be contraband and properly stored.

6

During his deposition of October 15, 2013, plaintiff stated that Defendant Godwin seized photos, mail, magazines, books and legal papers from his cell. He was unclear on the timing of this event, but testified that although the legal paperwork was not returned, he was able to receive an extension from the court, re-do his research and was not harmed by missing the deadline.

In April 2011 another shakedown of plaintiff's cell was performed. Defendant Godwin shook the legal materials in his cell and hundreds of photos, drawings and magazine cut-outs of children fell to the floor. Publications and periodicals and letters of a sexual nature were also seized. Plaintiff had been previously warned not to possess such items. An incident report was delivered to plaintiff the same day. The next day, the Unit Disciplinary Committee ("UDC") held a hearing and found plaintiff in violation of prohibited act #305—possession of unauthorized items. The following sanctions were imposed by the UDC: loss of telephone and commissary privileges for ninety days. Plaintiff remained in administrative detention until May 27, 2011. Telephone sanctions did not prohibit plaintiff from requesting or receiving legal telephone calls.

While plaintiff was in administrative segregation, plaintiff alleges he was denied religious services. He states he requested communion by placing a note in the crack of the

7

cell door and hoping a staff member would take it to the proper place. Defendant Johns stated he never received any request for plaintiff to receive Eucharist, but that plaintiff could have submitted a request to the Religious Services Department.

From December 1, 2011 to May 23, 2012, plaintiff, while still subject to restricted correspondence, was placed in administrative detention for committing the prohibited act of "use of the Mail for Abuses Other than Criminal Activity which Circumvent Mail Monitoring Procedures." In his complaint, plaintiff alleged he was denied the right to call his attorney and to attend Christmas Eve services during this time. However, in his deposition, he testified he was able to speak with his attorney several times during this period and attend religious services on a weekly basis (at least communion or a short five-minute service.) As to the Christmas Eve service, there is some dispute as to whether a request was made, but regardless defendant Johns stated in his declaration that he would have denied the request because of plaintiff being in administrative segregation and that the priest visited the detention area regularly.

Plaintiff continues to be on mail restriction, but the restriction has been relaxed to allow plaintiff to correspond with family, Rev. Carpenter, Dr. Fred Berlin, the Commonwealth

8

of Massachusetts the American College of Forensic Psychology, and Dr. Richard Wollert. These restrictions are reviewed periodically.

As to plaintiff's receipt of mail, defendant Steinour is in charge of screening incoming publications for all CTP inmates. She is not responsible for screening incoming and outgoing mail. If she determines a publication is inappropriate, she documents the rationale and requests rejection of a specific publication through the Warden, who is the official with the ultimate authority to reject it. As of December 2013, the following incoming publications have been rejected as relates to plaintiff: (1) Book titled "I'm No Monster – The Horrifying True Story of Josef Fritzl" – the description on the book cover states, "For twenty-four years, Josef Fritzl held his daughter prisoner as a sex slave, fathering seven of his own grandchildren. But the true depth of his depravity was yet to be discovered in the underground bunker his children called home..."; (2) Family Fun magazine; (3) Twist magazine; (4) Teen Vogue magazine; (5) Inside Gymnastics magazine; (6) Parents magazine; (7) Parent and Child magazine; (8) Book titled "Harmful to Minors – The Perils of Protecting Children From Sex"; (9) American Cheerleader magazine; (10) Inside Cheerleading magazine; (11) J-14 magazine; (12) Discovery Girls

9

magazine for Ages 8 and up; (13) Book titled "A History of Orgies"; (14) Parenting magazine; (15) Flip Fest Summer Camp magazine; and, (16) Adoptive Families magazine. (Declaration of Karen L. Steinour ¶ 9.)

## COURT'S DISCUSSION

### I. Motion to Overrule Discovery Objections

Plaintiff moves the court for an order overruling the objections filed by defendants to certain requests to produce documents and to overrule the order of the magistrate judge denying as moot his motion for production of documents. The court has carefully reviewed plaintiff's instant motion along with the magistrate judge's order and finds no reason to alter or amend the prior order or to overrule the objections. Therefore, plaintiff's motion [DE #84] is DENIED.

### II. Motion for Summary Judgment

#### A. Standard of Review

The court examines defendants' motion under the summary judgment standard in order to consider evidence outside of the pleadings. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

10

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and internal quotation marks omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## B. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether a public official is entitled to qualified immunity the court may

11

examine: (1) whether the facts that plaintiff has alleged make out a violation of a constitutional right and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).[2] The court may look to either aspect of the test first when determining the issue of qualified immunity. Id. at 236. The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001).

Plaintiff has failed to show facts to support a finding that the defendants, by following BOP regulations and policies, violated his constitutional rights. As detailed in the statement of the facts, supra, defendants were acting within and performing their duties pursuant to Bureau regulations and policies. While the court understands that plaintiff is upset that he has restrictions on his conduct, receipt of certain publications, etc., there is no evidence that the officials violated BOP policy in enforcing the restrictions. As defendants relied on these policies and acted pursuant to them, they did not violate any clearly established constitutional

---

[2] In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001), leaving broader discretion for the district courts to properly apply qualified immunity.

12

right. Accordingly, defendants are entitled to qualified immunity and are dismissed in their individual capacities.

### C. Commitment and Treatment Program

Plaintiff has been detained in the BOP's CTP at FCI Butner since October 14, 2010. He is currently awaiting hearing on the government's petition for his commitment as a "sexually dangerous person" pursuant to 18 U.S.C. § 4248. Plaintiff alleges that he, as a civil detainee, is not subject to BOP regulations and policies, and therefore should not be sanctioned as a result of violating BOP inmate rules.

Plaintiff argues that he has been wrongly subjected to disciplinary actions and been restricted in receiving and sending mail, use of the telephone, unable to attend religious services and placed in disciplinary segregation. As stated supra, plaintiff is properly subject to the restrictions and disciplinary consequences of the CTP.

Plaintiff correctly asserts that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982). However, plaintiff may still be subject to conditions within the bounds of professional

13

discretion that place restrictions on his personal freedoms. Id. Therefore, defendants are entitled to summary judgment on the issue of subjecting plaintiff to the CTP while incarcerated at Butner.

### D. Official Capacity Claims

When reviewing conditions of confinement for civil detainees, courts are to give the professionals running the institution deference in determining exactly what conditions of confinement are appropriate under the circumstances. "The Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Youngberg, 457 U.S. at 321. Furthermore, placement of civil detainees in a prison, subject to the institution's usual rules of conduct does not in and of itself equate to punishment of civil detainees and civil detainees are subject to the same security policies as those used at correctional facilities. Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003) ("If pretrial detainees may be subjected to the ordinary conditions of confinement as [Bell v. Wolfish, 441 U.S. 520 (1979)] holds, then so may persons detained before trial as sexually dangerous persons.").

14

While plaintiff alleges that he is subject to more severe conditions than a prisoner, there is no evidence of that in the record. There is evidence that the restrictions and conditions placed on plaintiff are tailored to the needs of persons detained as sexually dangerous persons or persons, such as plaintiff, who are detained pending a determination of sexual dangerousness. Plaintiff's allegations of severity and punishment, examined below, are not substantiated by the evidence in this case.

### 1. Segregation and Religious Services

Plaintiff alleges he was placed in administrative segregation in violation of his due process rights and furthermore that he was denied the right to attend religious services. Plaintiff was placed in disciplinary segregation for violations, e.g., possessing prohibited items. Disciplinary segregation does not violate the Due Process clause, unless some type of extreme deprivation occurs. See Sandin v. Conner, 515 U.S. 472 (1995), Deavers v. Santiago, 243 F. App'x 719, 721 (3rd Cir. 2007). Being placed in segregation for disciplinary infractions is not sufficient for plaintiff's Due Process claim to survive summary judgment.

As to denial of permission to attend or receive religious services while in disciplinary segregation, the evidence shows

15

that plaintiff made his request on a piece of paper placed in a crack in his cell door rather than on the proper forms and through the proper channels. There is no evidence that plaintiff complied with the proper procedure to request a religious service and no evidence that Defendant Johns improperly denied any such request. As to the request to attend a Christmas Eve service, plaintiff was still under investigation for committing a violation, and the court finds no deprivation of rights for denial of this particular request. See Sweet v. S.C. Dep't of Corr., 529 F.2d 854, 863 (4th Cir. 1975) ("Prison authorities accordingly may adopt any regulations dealing with the exercise by an inmate of his religion that may be reasonably and substantially justified by considerations of prison discipline and order.") The court finds that plaintiff has failed to show that his free exercise of religion was unduly burdened by defendants.

### 2. Correspondence Restrictions

Plaintiff argues that because he is a civil detainee he should not be subjected to any mail monitoring or limitations. This argument, however, is misguided. Courts have repeatedly upheld institutional rules concerning mail restrictions for civilly committed sexually dangerous persons. See e.g., Rivera v. Rogers, 224 F. App'x 148, 151 (3rd Cir. 2007) (upholding mail

16

monitoring policy for civilly committed sexually dangerous persons and finding that the Special Treatment Unit has a legitimate interest in both the safety of its facility and the rehabilitation of its patients); Turner v. Federal Bureau of Prisons, No. 5:11-CT-3177-D, 2013 WL 1700937, at *3 (E.D.N.C. Apr. 18, 2013). Plaintiff has failed to show that any defendant personally violated BOP policy by placing him on restricted correspondence or that the BOP did not use professional judgment in applying its correspondence policy to the CTP inmates. Restricting the publications that plaintiff may receive and restricting his correspondence falls within BOP officials' legitimate interest of both the safety of its facility and the rehabilitation of the civil detainees. Therefore, as to mail restrictions, plaintiff's claims fail.

### 3. Housing Searches

Plaintiff claims that Defendant Godwin and others violated his Fourth Amendment right to be free from unreasonable searches and seizures by searching his cell and seizing his property. Plaintiff fails to show that any person, including Defendant Godwin, violated BOP policy by conducting such searches, or that the BOP did not use its professional judgment in applying its search policy to civil detainees. See Youngberg, 457 U.S. at 321-22.

17

Pursuant to BOP Program Statement 5521.05, which applies to civil detainees in the CTP Program, staff may search an inmate's housing and work area, and personal items contained within those areas without notice or prior approval from the detainee and without the detainee's presence. These inspections should occur routinely, but irregularly, since they are designed primarily to detect contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards. Andrews Decl. ¶ 22. Furthermore, this court has previously upheld bans on the right of sexually dangerous persons to possess sexually explicit material because of the legitimate interest in doing so. See Turner, 2013 WL 1700937, at *3. Staff also routinely search CTP detainees' cells for the presence of items that may further their sexual deviance in order to promote accountability and personal responsibility.

Courts have generally upheld policies that subject civilly committed sexually dangerous persons to random cell searches for both security and rehabilitation purposes. See, e.g., Gilmore v. Kansas, No. 03-3222-JAR, 2004 WL 2203458, at *5 (D. Kan. Sept. 27, 2004) (Upholding ban on pictures of children in general because of legitimate treatment interests). The seizure of several publications, listed supra, falls within the category of legitimate treatment interests. Although plaintiff has chosen

18

not to participate in the treatment program offered by the BOP, he is still subject to the policies of the BOP program in which he is housed.

As to his claim of seizure of legal materials, plaintiff has shown no actual injury. In the present case, plaintiff has not shown how the seizure of his current complaint and research notes from his California court matter have adversely affected his legal case. Plaintiff stated in his deposition that he had suffered no actual harm from any alleged seizure. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff "must make specific allegations as to the actual injury sustained). Therefore, plaintiff's official capacity claims also fail, and the defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED [DE #85] and the court awards summary judgment in their favor on all claims. Plaintiff's motion [DE #84] is DENIED. The clerk is directed to close this case.

This 27TH day of March 2014.

*/s/ Malcolm J. Howard*
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26